

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

THADDEUS L. KABAT, JR.,

    Plaintiff,

v.

BAYER CROPSCIENCE LP,

    Defendant.

Action No. 3:07-CV-555

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion to Transfer Venue by Bayer Cropscience LP ("Bayer"). For the reasons stated below, the Motion shall be GRANTED and this case shall be TRANSFERRED to the United States District Court for the Middle District of North Carolina.

1. <u>Background</u>

In January 2000, Thaddeus L. Kabat, Jr. was hired by Gustafson LLC, which was partly owned (and now is fully owned) by Bayer, as a sales manager.[1] As a condition of his employment, Kabat was required to move from Texas to Chester, Virginia. From Virginia, he was responsible for the region "east of Ohio"; he supervised several sales representatives, one of whom worked in Virginia. Kabat's supervisor, Brad May, worked in Research Triangle Park, North Carolina, the site of Bayer's United States headquarters. May's

---

[1] According to the Charge of Discrimination that Kabat filed with the Virginia Council on Human Rights, he was hired in January 1999.

1

supervisors, Rick Turner and John Smith, who participated in decisions regarding Kabat's employment, also worked in North Carolina.

In December 2004, Kabat was offered a different position with Bayer, which required him to move to Indiana. He accepted the position, took steps to sell his house in Virginia, and built a house in Indiana, but in August 2005, before Kabat began working in Indiana, Bayer terminated his employment in a meeting that took place in North Carolina. Ted Stewart and Nate Jones, members of Bayer's human-resources department who participated in the decision to terminate Kabat, worked in North Carolina.

Kabat subsequently moved from Virginia to Massachusetts, where he currently resides with his mother. Then, in October 2006, Kabat filed a charge of age discrimination with the Virginia Council on Human Rights, claiming that Bayer's reason for terminating his employment – that his position was being eliminated – was a pretext. The claim was submitted to the Equal Employment Opportunity Commission, which issued a Dismissal and Notice of Rights on July 31, 2007. Kabat filed suit on September 10, 2007, seeking damages for Bayer's alleged violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), and Bayer filed the Motion that is now before the Court, asking the Court to transfer Kabat's suit to the Middle District of North Carolina.

2.  Analysis

The ADEA does not contain a provision addressing venue. Rebar v. Marsh, 959 F.2d 216, 216 (11th Cir. 1992) (applying § 1391(e) to a claim against a government

agency). Thus, a claim brought under the ADEA is governed by the general venue statute, 28 U.S.C. § 1391. The relevant provision of that statute provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, ... (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). In the context of § 1391, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). If a suit is filed in the wrong district, however, the court "shall dismiss, or if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought." Id. § 1406(a). A court may transfer a suit under § 1406(a) even if venue is proper, if another "impediment exists that would prevent the action from going forward in that district." In re Carefirst of Md., Inc., 305 F.3d 253, 255–56 (4th Cir. 2002).

Additionally, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Id. § 1404(a). But, a court may transfer a suit under § 1404(a) only if venue is proper in the transferor forum, Bd. of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc., 702 F. Supp. 1253, 1255 n.6 (E.D. Va. 1988), as well as in the transferee forum, BHP Int'l Inv., Inc. v. OnLine Exch., Inc., 105 F. Supp. 2d 493, 498 (E.D. Va. 2000).

3

Kabat concedes that he could have brought this suit in the Middle District of North Carolina, since some of the events or omissions giving rise to the claim occurred there. He also alleges that venue is proper in this Court because Bayer employed him in Virginia and had other contacts with the state that are sufficient to establish proper venue in this district. Whether Kabat means that (1) Bayer's contacts with Virginia are sufficient to give this Court personal jurisdiction over Bayer, entailing that Bayer resides in this district, or (2) that Bayer's contacts with Virginia include a substantial part of the events or omissions giving rise to Kabat's claim is unclear. Regardless of Kabat's theory, however, Bayer disagrees, contending that venue is not proper in the Eastern District of Virginia. However, Bayer asks the Court to transfer Kabat's suit pursuant to § 1404(a), implying that venue *is* proper in this district. Given that the parties' positions – and the relevant facts – do not clearly indicate whether § 1404(a) governs this matter, the Court analyzes Bayer's motion under both § 1404(a) and § 1406(a), reaching the same conclusion under each provision.

A. Transfer pursuant to § 1404(a)

To determine whether transfer would be proper under § 1404(a), courts typically consider (1) the plaintiff's choice of venue; (2) the location of witnesses and evidence; (3) the parties' convenience; and (4) the interest of justice.[2] See, e.g., Corry v. CFM Majestic, Inc., 16 F. Supp. 2d 660, 666 & n.14 (E.D. Va. 1998). The party requesting the transfer

---

[2] The Court has also considered (1) the cost of obtaining the attendance of witnesses; (2) the availability of compulsory process; and (3) the interest of having local controversies decided at home. Verosol B.V. v. Hunter Douglas, Inc., 806 F. Supp. 582, 592 (E.D. Va. 1992) (internal citations omitted). Neither side argues that these factors are relevant.

bears the burden of showing that the transfer is warranted. <u>Cognitronics Imaging Sys. v. Recognition Research, Inc.</u>, 83 F. Supp. 2d 689, 696 (E.D. Va. 2000).

1. <u>Kabat's choice of venue</u>

A plaintiff's choice of venue is given "substantial weight,"<u>Koh v. Microtek Int'l, Inc.</u>, 250 F. Supp. 2d 627, 633 (E.D. Va. 2003), unless (1) the plaintiff selects a foreign forum or one with "little or no relation" to his claim, <u>JTH Tax, Inc. v. Lee</u>, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007) (internal citation omitted); (2) the location of witnesses and evidence and the parties' convenience <u>strongly</u> favors transferring the case, <u>Koh</u>, 250 F. Supp. 2d at 633 (E.D. Va. 2003) (internal punctuation and citations omitted); or (3) the location of witnesses and evidence, the parties' convenience, and the interest of justice – taken together – outweigh the plaintiff's choice of venue, <u>Beam Laser Sys., Inc. v. Cox Commc'ns, Inc.</u>, 117 F. Supp. 2d 515, 519 (E.D. Va. 2000).

Kabat argues that his choice of venue should be given substantial weight because he lived in Virginia while he was employed with Gustafson and Bayer, at the time that he was terminated, and when he submitted a charge of discrimination to the EEOC. But, Kabat currently lives in Massachusetts, as he did when he filed this suit. Thus, this district is a foreign forum for Kabat. Moreover, his supervisor and the other Bayer employees who were involved in the decision to terminate Kabat are located in North Carolina, where the decision was made. Thus, this district bears "little or no connection" to the event underlying his claim. Accordingly, Kabat's choice of venue does not merit substantial weight, and the Court will decide Bayer's Motion on the basis of the other factors listed above. <u>See U.S.</u>


Ship Mgmt., Inc. v. Maersk Line, Ltd., 357 F. Supp. 2d 924, 937 (E.D. Va. 2005) (noting that because the chosen forum was not either party's home forum and the facts underlying plaintiff's claim bore little relation to that forum, plaintiff's choice would be given little weight); cf. Lycos, Inc. v. TiVo, Inc., 499 F. Supp. 2d 685, 692 (E.D. Va. 2007) (noting that the fact that the defendant's alleged wrongdoing did not occur in the district that the plaintiff chose weighed in favor of transferring the suit).

    2.    The location of witnesses and evidence

The convenience of witnesses and access to sources of proof is "often dispositive" in § 1404(a) motions. Koh, 250 F. Supp. 2d at 636. Generally, a party seeking to transfer a case for the sake of a witness's convenience must provide an affidavit identifying the witness and the testimony that he would provide. See Bd. of Trs., 702 F. Supp. at 1258 (ruling that showing that several necessary witnesses were located in a proposed transferee forum was not sufficient to demonstrate the transferee forum would be more convenient). But, the Court has relaxed that requirement in cases in which the movant provided uncontroverted evidence that witnesses were located where the alleged unlawful activities took place – the "center of activity" of the case. See, e.g., Telepharmacy Solutions, Inc. v. Pickpoint Corp., 238 F. Supp. 2d 741, 744 (E.D. Va. 2003) (holding that, since a majority of the documentary and testimonial evidence was located in the proposed transferee forum, venue transfer was proper). The "center of activity" test is a shorthand method for applying § 1404(a); it is an attempt to mitigate the difficulty of producing specific information about witnesses early in a case, when any motions to transfer must be filed. See Koh, F. Supp. 2d

at 636. Although this approach has been used primarily in patent cases, see id. (internal citation omitted), it has been used in other contexts, see, e.g., Hanover Ins. Co. v. Paint City Contractors, Inc., 299 F. Supp. 2d 554, 557–58 (E.D. Va. 2004) (applying that test in a suit for a breach of contract).

Here, Kabat's supervisor and several other Bayer employees who participated in the decision to terminate Kabat – Turner, Smith, Stewart, and Jones – are located in North Carolina. Kabat, who alleges that everyone with knowledge that is relevant to this case is located in Virginia or North Carolina,[3] has not identified any witnesses in this district. In addition, the documents related to this case are located in North Carolina, according to Bayer, or in Pennsylvania, according to Kabat. Even if Kabat is correct, however, it is doubtful that "in the age of electronic discovery, the location of potentially relevant documents has much impact on the convenience of either party." Finmeccanica S.p.A. v. Gen. Motors Corp., 2007 WL 4143074, at *7 (E.D. Va. Nov. 19, 2007). Since most of the witnesses in this case are located in North Carolina and the documents – which can be produced more easily, suggesting that the convenience of the witnesses should take precedence – are not located in Virginia, this factor suggests that transfer would be appropriate. See Lycos, 499 F. Supp. 2d at 693 (noting that the fact that "no relevant

---

[3] Thus, any other people whose testimony could be relevant (e.g., other sales managers who, according to Kabat, were "demoted," see Pl.'s Compl. at 2) would have to travel to either of those states, and thus the Court should give little emphasis to their convenience. See Agilent Techs., Inc. v. Micromuse, Inc., 316 F. Supp. 2d 322, 328 (giving little weight to the convenience of witnesses if they would have to travel to another state, regardless of where a case was decided, and nothing in the record suggested that traveling to one forum would be more inconvenient than traveling to the other).

7

documents or persons with knowledge relevant to this action" were located in the forum chosen by the plaintiff diminished the weight to be given to that choice).

### 3. The convenience of the parties

Although the parties' convenience is important, a court may not justify shifting the burden of travel from a defendant to a plaintiff on the basis of this factor. Bd. of Trs., 702 F. Supp. at 1259. Courts generally evaluate this factor by considering the parties' residences. JTH Tax, Inc., 482 F. Supp. 2d at 738.

Kabat resides in Massachusetts, entailing that he will have to travel to the southern part of the United States to prosecute his claim in any case. He has not explained why traveling to North Carolina would be more burdensome than traveling to Richmond. While Kabat argues that his attorney is not licensed to practice law in North Carolina, forcing him to hire a new attorney (or, at least local counsel) if his suit is transferred, other courts have given little weight to that concern. See Chicago, R.I. & P.R. Co. v. Igoe, 220 F.2d 299, 304 (7th Cir. 1955); Scheinbart v. Certain-Teed Prods. Corp., 367 F. Supp. 707, 710 (S.D.N.Y. 1973) (internal citations omitted). Finally, Kabat contends that transferring the suit would delay its resolution, serving Bayer's strategic interests and significantly prejudicing Kabat. But, since Kabat does not explain or support this statement, the Court should not give it very much weight. In contrast, North Carolina is much more convenient for Bayer, as its headquarters is located there, as are most of the witnesses whose testimony Bayer will need to collect. Thus, this factor supports transferring the case.

4. <u>The interest of justice</u>

This factor is a "broad category" that includes a variety of concerns, including (1) whether any related actions are pending; (2) the court's familiarity with the applicable law; (3) docket conditions; (4) access to premises that may need to be viewed; (5) the possibility of unfair trial; (6) the ability to join other parties; and (7) the possibility of harassment. <u>Bd. of Trs.</u>, 702 F. Supp. at 1260; see <u>Acterna v. Adtech, Inc.</u>, 129 F. Supp. 2d 936, 940 (E.D. Va. 2001) (noting that the court's familiarity with the applicable law is relevant only in diversity cases). According to Kabat and Bayer, docket conditions is the only relevant concern.[4]

Docket conditions favor transferring a suit if the transferee court would resolve the suit more efficiently and/or quickly. See <u>Bd. of Trs. v. Sullivant Ave. Props., LLC</u>, 508 F. Supp. 2d 473, 479 (E.D. Va. 2007). Docket conditions are a minor consideration and cannot be the primary reason for retaining venue. <u>Koh</u>, 250 F. Supp. 2d at 639 (noting that docket conditions should be given little weight if every other "reasonable and logical factor[]" favors transferring a suit). And, this Court's reputation as the "rocket docket" cannot be the primary reason for retaining a case in the Eastern District of Virginia. <u>Cognitronics Imaging Sys., Inc.</u>, 83 F. Supp. 2d at 699.

Neither party has shown that the Middle District of North Carolina is likely to resolve this dispute more or less efficiently or quickly than the Eastern District of Virginia. While on

---

[4] Kabat argues that the court's familiarity with the applicable law is also relevant. But, since the Court has federal-question jurisdiction over this matter, the Court's familiarity with the applicable law does not matter. See <u>Acterna</u>, 129 F. Supp. 2d at 940.

average this Court resolves cases significantly more quickly – on average, a civil action is tried in the Eastern District of Virginia only nine months after it is filed, compared with eighteen months in the Middle District of North Carolina, see Federal Court Management Statistics 2007, available at http://www.uscourts.gov/cgi-bin/cmsd2007.pl (accessed April 29, 2008) – extrapolating from that trend to what would happen in this matter would take the reputations of those courts into account in a way that the Cognitronics Court discouraged. Thus, this factor does not favor transferring the suit.

In conclusion, most of these considerations suggest that transferring Kabat's suit under § 1404(a) to the Middle District of North Carolina would be appropriate.

B.   Transfer pursuant to § 1406(a)

Under § 1406(a), a court may dismiss or – "if it be in the interest of justice" – transfer a case that is filed in the wrong district. Whether a transfer is in the "interest of justice" in the context of this provision depends on the same analysis that applies under § 1404(a). Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1201 n.5 (4th Cir. 1993). In fact, some courts have analyzed requests for transfers under § 1406(a) in terms of the four factors that govern transfers under § 1404(a). See, e.g., Affinity Memory & Micro, Inc. v. K & Q Enters., Inc., 20 F. Supp. 2d 948, 954 n.12 (E.D. Va. 1998). Although the miscellany of considerations that comprise the "interest of justice" do not weigh strongly in favor of transfer, the other factors discussed above suggest that this suit could be tried more logically and conveniently in North Carolina.

Accordingly, if § 1404(a) does not govern this matter, the Court finds that transferring this suit is appropriate under § 1406(a) on the basis of the considerations discussed above: Kabat's choice of forum is entitled to little weight, the convenience of witnesses and access to sources of proof favors transfer, and trying this case in North Carolina is more convenient for Bayer and is not less convenient for Kabat.

3. <u>Conclusion</u>

For the reasons stated above, the Court will GRANT Bayer's Motion to Transfer Venue.

It will be SO ORDERED.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this 22nd day of May 2008